JS 6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7549 | **DATE** | 7/24/2001 |
| **CASE TITLE** | T.V. RYAN, et al vs. UNION PACIFIC RR. CO., et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's motion to dismiss Plaintiffs' complaint and cross-plaintiff's cross-claim pursuant to Rule 12(b)(1) [8-1] is granted. Because the Court dismisses the complaint and cross-claim for lack of subject matter jurisdiction, defendant's Rule 12(b)(6) motion is denied as moot. This case is hereby terminated. Status hearing date of 7/25/01 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 26 2001 | |
| | Notified counsel by telephone. | | date docketed | 12 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 JUL 26 AM 6:26 | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

T.V. RYAN, ROBERT J. KATCHER, )
GARY P. STRACK, JULIUS D. MANN, JR., )
and W.K. McKENZIE, )
                                          )
        Plaintiffs, )
                                          )
        v. )        **DOCKETED**
                                          )        JUL 2 6 2001
UNION PACIFIC RAILROAD COMPANY )
and UNITED TRANSPORTATION UNION, )  No. 00 C 7549
                                          )
        Defendants. )  Judge Ronald A. Guzmán
————————————————)
                                          )
UNITED TRANSPORTATION UNION, )
        Cross-Plaintiff, )
        v. )
UNION PACIFIC RAILROAD COMPANY, )
        Cross-Defendant. )

## MEMORANDUM OPINION AND ORDER

This matter is now before the Court on defendant Union Pacific Railroad Company's ("UP") motion to dismiss pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) and 12(b)(6). Plaintiffs brought suit against the defendants alleging that the Schedule Rules and Agreement ("UTU-UP Agreement") in place between the defendants violated the Railway Labor Act ("RLA"). Cross-plaintiff filed a cross-claim against cross-defendant UP alleging that UP did not follow the UTU-UP Agreement and that the UTU-UP Agreement violated the RLA. For the reasons stated

1

below, the Court grants UP's motion to dismiss and hereby terminates this case.

## FACTS

Plaintiffs are five individuals employed as trainmen by UP. (*Compl.* ¶¶ 17-21.) Plaintiffs are all members of the General Committee of Adjustment, Brotherhood of Locomotive Engineers, UP, former C&NW ("BLE"). (*Id.*) BLE is a labor organization and unincorporated association. (*Id.* ¶ 11.) BLE is affiliated with the Brotherhood of Locomotive Engineers, AFL-CIO, an international labor organization representing locomotive engineers. (*Id.*) UP is a "carrier" within the meaning of § 1, First of the RLA, and its activities are subject to the RLA. (*Id.* ¶ 6). On or about May 1, 1995, UP acquired the Chicago & North Western Transportation Company ("C&NW"), another railroad. (*Id.* ¶ 7.) Prior to its acquisition by UP, C&NW was a "carrier" within the meaning of the RLA. (*Id.* ¶ 8.) Defendant and cross-plaintiff United Transportation Union ("UTU") is a labor organization and unincorporated association representing different crafts of railroad employees. (*Id.* ¶ 9; *Def. UTU's Answer* ¶ 9.) UTU has entered into collective bargaining agreements (known within the railroad industry as "Schedule Rules and Agreements") with UP or its predecessor companies on behalf of trainmen employed on the former C&NW property. (*Compl.* ¶ 9; *Def. UTU's Answer* ¶ 9.)

Since at least 1978, each of the UTU-UP Agreements has contained a provision for UTU's representation of trainmen employed on the C&NW property in the filing of claims and grievances under the UTU-UP Agreement. (*Compl.* ¶ 10; *Def. UTU's Answer* ¶ 10.) Trainmen may satisfy the requirement under the RLA that they maintain membership in a labor organization by becoming and remaining members of the BLE. (*Compl.* ¶ 12; *Def. UTU's*

2

*Answer* ¶ 12.) Beginning in at least May 1989, and continuing thereafter, BLE has filed claims and grievances on behalf of trainmen employed on the C&NW property whenever a trainman requests that BLE represent him. (*Compl.* ¶ 14.) Before and after the acquisition of C&NW by UP, this practice continued without interruption until June 23, 2000, when UP announced that BLE would no longer be allowed to handle time claims and grievances arising under the UTU-UP Agreement. (*Id.* ¶¶ 15-16.) At the same time that UP announced that the UTU-UP Agreement in place did not allow BLE to represent trainmen in the handling of time claims and grievances, it announced that BLE could continue to represent trainmen in disciplinary matters. (*Cross Pl. UTU's Cross-cl.* ¶ 5.)

From January to April 2000, plaintiffs submitted various claims for pay arising out of the UTU-UP Agreement. (*Pls.' Compl.* ¶¶ 22, 27, 32, 37, 42.) Each of the plaintiffs requested that BLE represent him in the processing of his claim. (*Id.* ¶¶ 23, 28, 33, 38, 43.) Each of plaintiffs' claims was denied. (*Id.* ¶¶ 24, 29, 34, 39, 44.) On behalf of each of the plaintiffs, BLE filed a timely appeal from UP's denial of the plaintiffs' claims pursuant to the grievance handling provision contained in the UTU-UP Agreement. (*Id.* ¶¶ 25, 30, 35, 40, 45.) UP ultimately rejected each of the plaintiffs' appeals stating that BLE was not the certified bargaining representative of the plaintiffs and that BLE could not progress claims or grievances under the UTU-UP Agreement because only UTU officers could progress such matters. (*Id.* ¶¶ 26, 31, 36, 41, 46.)

Plaintiffs do not challenge the interpretation of the UTU-UP Agreement provisions forbidding claims from being handled by any representative other than UTU. (*Pls.' Mem. Opp. Mot. Dismiss Compl. ("Pls.' Mem.")* at 4-5.) Instead, plaintiffs allege that the RLA provides a

3

statutory guarantee that disputes handled at the company level will be handled according to the customary practice of the parties and that any agreement entered into by a carrier which abrogates that customary practice is unlawful because it violates § 3, First (i) of the RLA. (*Id.* at 8.) Plaintiffs contend that the eleven-year practice of allowing BLE to represent trainmen at company-level proceedings has become the "usual manner" of handling those claims and that the provisions of the UTU-UP Agreement abrogating that process are unlawful because they are in violation of the RLA. (*Id.* at 4, 8.) Plaintiffs filed their complaint on November 30, 2000, asking this Court to declare their right to have BLE represent them in the handling of grievances and claims at the company level and to declare the exclusive representation provisions contained in the UTU-UP Agreement invalid because they violate the RLA. (*Compl.* ¶¶ 11-12.)

UTU was joined in the plaintiffs' action as an indispensable party pursuant to Rule 19. (*Id.* ¶ 9.) UTU answered the complaint on January 26, 2001, and filed a cross-claim against UP alleging that allowing BLE to represent trainmen for *disciplinary* proceedings is not the "usual manner" of handling such disputes. (*Cross-pl.'s Cross-cl.* ¶ 4.) UTU also challenges the authority of UP to interpret the UTU-UP Agreement. (*Id.* ¶ 8.) Finally, UTU alleges that UP violated the UTU-UP Agreement by allowing BLE representatives to progress employees' claims at the company level. (*Id.* ¶ 9.)

## DISCUSSION

UP brings this motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) arguing that this Court does not have jurisdiction over the plaintiffs' and cross-plaintiff's claims and arguing that they have failed to state a claim for which relief can be granted. Rule 12(b)(1) permits a court to

4

dismiss an action for lack of jurisdiction over the subject matter. On a Rule 12(b)(1) motion, the party invoking the court's jurisdiction bears the burden of persuading the court that subject matter jurisdiction exists. *See Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). If a Rule 12(b)(1) challenges a court's subject matter jurisdiction based on the sufficiency of the pleading's allegations (a "facial" attack on the pleading), then those allegations are construed in the light most favorable to the non-moving party. *See id.* UP's motion attacks the sufficiency of the plaintiffs' and cross-plaintiff's pleadings, and therefore the plaintiffs' and cross-plaintiff's allegations will be construed in the light most favorable to them.

Plaintiffs' claim and cross-plaintiff's cross-claim arise out of the handling of railway employees' time claims. The RLA provides that disagreements over the interpretation and application of the agreement shall be handled rather informally on the company property (at the "company level"). § 3, First (i) of the RLA provides that these company-level disputes shall be handled in the "usual manner." If the parties cannot resolve a dispute at the company level, the RLA allows the parties to appeal the dispute to an adjustment board. UP argues that the "usual manner" of handling company-level grievances is the procedure which is established by the UTU-UP Agreement. (*Def. UP's Reply Mem.* at 4.) UP concludes from this that the plaintiffs and cross-plaintiff have failed to state a claim under Rule 12(b)(6), but, as will be explained below, this conclusion goes to the jurisdiction of this Court.

Plaintiffs attempt to state a claim under § 3, First (i) of the RLA relying on the Supreme Court's dicta in *Landers v. National Railroad Passengers Corp.*, 485 U.S. 652, 657 n.4 (1988). In *Landers*, the Supreme Court decided that § 2, Eleventh (c) of the RLA did not give an employee the right to be represented by a minority union at company-level grievance and

5

disciplinary hearings. *Id.* at 657. In so holding, the Supreme Court noted that "an employee may be entitled to be heard through the representative of his choice at company-level grievance and disciplinary proceedings if that has become the 'usual manner' of handling disputes at his workplace." *Id.* at 657 n.4. The Supreme Court was referring to § 3, First (i) of the RLA, which provides that "disputes between an employee . . . and a carrier . . . growing out of the interpretation or application of agreements concerning rates of pay, rules or working conditions, . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes . . . ."

Relying on this dicta, plaintiffs argue that § 3, First (i) of the RLA guarantees their right to be represented by their minority union at company-level grievance and disciplinary proceedings if minority-union representation is the "usual manner" of handling company-level proceedings. (*Compl.* ¶ 53.) Cross-plaintiff argues that allowing BLE to represent employees at company-level disciplinary proceedings is not the "usual manner" for handling those hearings and therefore violates § 3, First (i) of the RLA. (*Cross-pl.'s Cross-cl.* ¶ 4.) Plaintiffs argue that the eleven-year practice of allowing the minority union to represent employees at company-level grievance and disciplinary proceedings has become the "usual manner" of handling those claims and that the exclusive representation provision in the UTU-UP Agreement is invalid under § 3, First (i) of the RLA because it does not allow employees to be represented by their minority union in the "usual manner." (*Compl.* ¶ 53.) Plaintiffs urge that this Court has jurisdiction over their claims arguing that their claims do not require the interpretation of the UTU-UP Agreement, but rather a determination by this Court of whether the UTU-UP Agreement is invalid because it violates the RLA. (*Pls.' Mem.* at 9.)

6

While the Supreme Court did recognize that a railway employee may be entitled under the RLA to minority-union representation at the company level if minority-union representation is the "usual manner" of handling company-level proceedings, it did not address how a court should determine what the "usual manner" of handling company-level disputes is. *See Landers*, 485 U.S. at 657 n.4  Nor did the Supreme Court address whether a federal court would have jurisdiction over an employee's claim that the "usual manner" of resolving a dispute was not followed.  There are several Seventh Circuit cases decided before and after *Landers* that shed light on these questions and will guide this Court's decision.

In *Edwards v. St. Louis-San Francisco Railroad Co.*, 361 F.2d 946 (7th Cir. 1966), a railway employee alleged that the court had jurisdiction to review a decision of the National Railroad Adjustment Board because he was denied due process during a company-level disciplinary proceeding. *Id.* at 953-54.  The Seventh Circuit held that it did not have the authority to review the National Railroad Adjustment Board's decision noting that "federal courts are not the guarantors of any rights of either labor or management" at company-level proceedings. *Id.* at 954-55.  The Seventh Circuit further held that at the company level "the dispute is between private parties and the applicable procedure for settling the dispute is governed by the [agreement] between them" and not by the RLA. *Id.* at 954.  "Therefore, when a railroad employee questions the propriety of the initial hearing held on carrier property, his claim must be based on the provisions of the [agreement] relating to that subject." *Id.*  Therefore, according to the *Edwards* court, the guarantee contained in § 3, First (i) of the RLA that minor disputes "shall be handled in the usual manner" is a guarantee that the dispute shall be handled

7

according to the terms of the agreement in place between the carrier and the union.[1]

This holding was reaffirmed by the Seventh Circuit in *Kulavic v. Chicago & Illinois Midland Railway Co.*, 1 F.3d 507, 515 (7th Cir. 1993), and again in *Pawlowski v. Northeast Illinois Regional Commuter Railroad Corp.*, 186 F.3d 997, 1000 (7th Cir. 1999), *cert. denied*, 528 U.S. 1117 (2000). Referring to § 3, First (i) of the RLA, the *Pawlowski* court noted that "[t]he 'usual manner' has been interpreted to mean that minor disputes are handled at the company level *according to the procedures established by the railroad and the union through the [agreement] rather than by the RLA.*" *Pawlowski*, 186 F.3d at 1000 (emphasis added) (citing *Kulavic v. Chicago & Ill. Midland Ry. Co.*, 1 F.3d 507, 513 (7th Cir. 1993); *Landers v. Nat'l R.R. Passenger Corp.*, 814 F.2d 41, 44 (1st Cir. 1987), *aff'd*, 485 U.S. 652 (1988); *Edwards v. St. Louis-San Francisco R.R. Co.*, 361 F.2d 946, 953 (7th Cir. 1966); *Broady v. Ill. Cent. R.R. Co.*, 191 F.2d 73, 77 (7th Cir. 1951)); *see also Pawlowski v. Northeast Ill. Reg'l Commuter R.R. Corp.*, 31 F. Supp. 2d 1051, 1053 (N.D. Ill. 1998) (dismissing a railway employee's claim for lack of jurisdiction because the claim depended on an interpretation of the agreement).

The plaintiffs' and cross-plaintiff's claim that the "usual manner" of handling company-level grievance proceedings has not been followed necessarily requires an interpretation of the UTU-UP Agreement because, as explained above, the "usual manner" of handling those

---

[1] There is support for this interpretation of the "usual manner" in the legislative history of the RLA. There is evidence that the "usual manner" was meant to refer to the procedures that a carrier had created for resolving company-level disputes. *See Railroad Labor Disputes: Hearings Before the Comm. on Interstate and Foreign Commerce*, 69th Cong. 67-68 (1926) (statement of Donald R. Richberg, Counsel for the Organized Railway Employees). If the "usual manner" referred to the procedure that a carrier had designated, it follows that where there is an agreement in place between the carrier and the union, the procedure established by the agreement would be the "usual manner" of handling such claims.

8

proceedings is governed by the related provisions in the UTU-UP Agreement. A dispute arising or growing out of the interpretation or application of an existing agreement is "subject to compulsory and binding arbitration before the National Railroad Adjustment Board . . . or before an adjustment board established by the employer and the unions representing the employees." *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 303 (1989); *see also* § 3, Second of the RLA. The National Railroad Adjustment Board (or an adjustment board established by the employer and the union) has exclusive jurisdiction over these types of disputes. *Consol. Rail Corp.*, 491 U.S. at 304.

It is clear that, under *Pawlowski* and *Consolidated Rail Corp.*, this Court does not have jurisdiction over plaintiffs' claims and cross-plaintiff's cross-claim because this Court would be called on to interpret the UTU-UP Agreement in order to determine what the "usual manner" of handling the company-level grievance and disciplinary proceedings is.[2] The original disputes between plaintiffs and UP were all minor disputes that could have been conclusively resolved solely by an interpretation and application of the existing UTU-UP Agreement. (*Compl.* ¶¶ 22, 27, 32, 37, 42.) As such, they should have been handled in "[t]he 'usual manner' according to the procedures established by the railroad and the union through the [agreement] rather than by the RLA." *Pawlowski*, 186 F.3d at 1000. Plaintiffs contend that the proceedings at the

---

[2] The Court notes that even if it had jurisdiction over plaintiffs' claims (which it does not), plaintiffs may not be able to state a claim upon which relief could be granted. The "usual manner" of handling a grievance is that procedure set forth in the UTU-UP Agreement. Plaintiffs do not challenge the interpretation of the UTU-UP Agreement that does not grant an employee the right to be represented by his minority union. (*Pls.' Mem.* at 4-5.) It is not clear that plaintiffs can concede that the UTU-UP Agreement has been correctly interpreted and applied while claiming that the "usual manner" of handling a grievance has not been followed.

company-level were not handled in the "usual manner." (*Pls.' Mem.* at 4, 8.) Therefore, this Court has no jurisdiction over plaintiffs' claims because it would be called on to interpret and apply the UTU-UP Agreement in order to determine whether the procedures established by UP and UTU through the Agreement were followed and whether the plaintiffs were entitled to be represented by their minority union at the company-level grievance proceeding. *See Consol. Rail Corp.*, 491 U.S. at 303.

The Court notes that the definition of "usual manner" announced in *Pawlowski* does not conflict with the Supreme Court's dicta in *Landers* ensuring minority-union representation to railway employees where minority-union representation has become the "usual manner" for handling company-level proceedings. *Landers*, 485 U.S. at 657 n.4. Under *Pawlowski*, a railway employee would be entitled to minority-union representation at company-level proceedings where the agreement provides for such representation.

Plaintiffs' rely on the Seventh Circuit's decision in *McElroy v. Terminal Railroad Association of St. Louis*, 392 F.2d 966 (7th Cir. 1968) to support their argument that this Court has jurisdiction over their claims. (*Pls.' Mem.* at 11-12.) Plaintiffs' reliance on *McElroy* is misplaced. In *McElroy* the Seventh Circuit held that it had jurisdiction over the claims of railway employees who "shuttle[d] back and forth between" two crafts because questions about the validity of an agreement under the RLA are properly decided by the courts, rather than by an adjustment board. *Id.* at 967, 970. The court held that the employees had a statutory right under the RLA to choose to have a minority-union represent them for time claims and at disciplinary investigations. *Id.* at 972. Recently, the Seventh Circuit has noted that "the continued validity of the precise holding of *McElroy* is in doubt" in light of the Supreme Court's decision in *Landers*

*v. National Railroad Passengers Co.*, 485 U.S. 652 (1988). *Pawlowski*, 186 F.3d at 1002 n.4.

In this case, however, this Court is not called on to determine whether the UTU-UP Agreement is valid under the RLA (in which case this Court would have jurisdiction). Rather, plaintiffs' claims and cross-plaintiff's cross-claim would require this Court to determine whether "usual manner" of handling company-level proceedings were complied with (that is, whether the representation provisions in the UTU-UP Agreement were followed). *McElroy* is not applicable in the current matter.

Plaintiffs point to three cases (two of which are unreported) to support their argument that the "usual manner" of handling company-level grievance and disciplinary procedures is not necessarily the manner provided by the UTU-UP Agreement and is instead the "customary practice" of handling company-level proceedings: *Landers v. National Railroad Passenger Corp.*, No. CIV.A.84-467-K (D. Mass. June 24, 1986) ("*Landers I*"), *Landers v. National Railroad Passenger Corp.*, 814 F.2d 41 (1st Cir. 1987) ("*Landers II*"), and *Peters v. National Railroad Passenger Corp.*, No. CIV.A. 83-3431, 1988 WL 71944 (D.D.C. June 20, 1988). (*Pls.' Mem.* at 6-8, 14-15.) All of these cases were decided outside of the Seventh Circuit and before the *Pawlowski* decision clarified the meaning of "usual manner" under § 3, First (i) of the RLA. This Court is bound to follow the definition of "usual manner" given in *Pawlowski*, 186 F.3d at 1000.

The court in *Landers I* applied a definition of "usual manner" that was not solely based on the provisions contained in the agreements. *See Landers I*, No. CIV.A.84-467-K, slip op. at 6. The district court in *Landers I* determined that the practices alleged by the plaintiffs in each case did not rise to the level of "usual manner" under § 3, First (i) of the RLA and dismissed the

11

plaintiff's claim on that basis rather than on jurisdictional grounds. *Id.* The court in *Landers I* noted that "[a]lthough the language of the [RLA] itself does not compel the conclusion that the term 'usual manner' refers to the 'usual manner in which, as a factual matter, a particular carrier and its employees have resolved their disputes,' the parties on both sides assume that this is the proper definition." *Id.* The court in *Landers I* also relied on the Seventh Circuit's opinion in *McElroy v. Terminal R.R. Ass'n of St. Louis*, 392 F.2d 966 (7th Cir. 1968) and applied this definition of "usual manner" at least in part "because no indication that any different meaning was intended has been brought to the court's attention." *Id.*

In light of the Seventh Circuit's decisions in *Pawlowski* and *Edwards*, this Court finds the district court's reasoning in *Landers I* unpersuasive and is bound to follow the Seventh Circuit's definition of "usual manner." Both *Pawlowski* and *Edwards* give a clear indication that the "usual manner" means the procedures established by the agreement between the carrier and the union rather than the customary practice of handling disputes.

In the First Circuit's opinion in *Landers II*, the court affirmed the district court's opinion in *Landers I* and seemed to imply that the "usual manner" for handling company-level disciplinary and grievance proceedings may not necessarily be the manner provided in the Agreement. *See Landers II*, 814 F.2d at 47, 49. In *Landers II*, the court noted that "[i]n investigations, conferences or hearings by or before officers of the carrier an existing legal contract [Agreement] controls." *Id.* at 44. This statement is consistent with the *Edwards* and *Pawlowski* definition of "usual manner" and was in fact cited with approval by the *Pawlowski* court. *See Pawlowski*, 186 F.3d at 1000. Yet the *Landers II* court went on to inquire into "the practices in vogue in the particular workplace" in order to determine what the "usual manner" of

12

handling company-level proceedings was. *Landers II*, 814 F.2d at 47. To the extent that the First Circuit's opinion in *Landers II* can be read as approving of an extra-contractual definition of the "usual manner," this Court will not follow it and instead follow the Seventh Circuit's definition of "usual manner." *See Pawlowski*, 186 F.3d at 1000; *see also Kulavic v. Chicago & Ill. Midland Ry. Co.*, 1 F.3d 507, 513 (7th Cir. 1993); *Edwards v. St. Louis-San Francisco R.R. Co.*, 361 F.2d 946, 953 (7th Cir. 1966); *Broady v. Illinois Cent. R.R. Co.*, 191 F.2d 73, 77 (7th Cir. 1951); *Pawlowski v. Northeast Ill. Reg'l Commuter R.R. Corp.*, 31 F. Supp. 2d 1051, 1053 (N.D. Ill. 1998).

In *Peters*, the court also applied a definition of "usual manner" that was not solely based on the provisions contained in the agreement between the carrier and the union. *See Peters*, 1988 WL 71944, at *3. The *Peters* court dismissed the railway employee's claim because the practice alleged did not rise to the level of the "usual manner" under § 3, First (i) of the RLA. *Id.* The *Peters* court relied on the First Circuit's opinion in *Landers II* which applied a definition of the "usual manner" that looked beyond the agreement in place between the carrier and the union. *See id.* For the reasons stated above, this Court does not find the First Circuit's opinion in *Landers II* persuasive so as to stray from the teachings of *Pawlowski* and *Edwards*.

In sum, § 3, First (i) of the RLA guarantees that a carrier cannot depart from the company-level grievance and disciplinary procedure established by the agreement without violating both the agreement and the RLA. In the current matter, however, since an interpretation of the UTU-UP Agreement is necessary in order to determine whether UP has departed from the UTU-UP Agreement's procedure for handling company-level grievance or disciplinary hearings, this Court does not have jurisdiction over the plaintiffs' claims. *See*

13

*Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 303 (1989).[3]

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss plaintiffs' complaint and cross-plaintiff's cross-claim pursuant to Rule 12(b)(1) [docket no. 8-1] is granted. Because the Court dismisses the complaint and cross-claim for lack of subject matter jurisdiction, defendant's Rule 12(b)(6) motion is denied as moot. This case is hereby terminated.

**SO ORDERED**  ENTERED: 7/24/07

_____
HON. RONALD A GUZMAN
United State Judge

---

[3] The Court notes other reasons for dismissing cross-plaintiff's cross-claim. Cross-plaintiff alleges in its cross-claim that "[i]t is incorrect for UP to interpret" the UTU-UP Agreement because "UP conceded that right [to] the UTU in the" UTU-UP Agreement and that UP violated the UTU-UP Agreement when it allowed BLE to progress train service employees' claims at the company-level. (*Cross-pl.'s Cross-cl.* ¶¶ 8-9.) Clearly, this Court does not have jurisdiction over cross-plaintiff's claim because this Court would be required to interpret the UTU-UP Agreement. *See Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 303 (1989); *see also* § 3, Second of the RLA. For these reasons, in addition to the reasons stated above, the cross-plaintiff's cross-claim must be dismissed for lack of subject matter jurisdiction.